ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
7/10/2025 5:10 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-24-00114-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
7/10/2025 5:10:42 PM
CHRISTOPHER A. PRINE
Clerk

# In the Fifteenth District Court of Appeals

**Cecile Erwin Young, in Her Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission, Molina Healthcare of Texas, Inc., and Aetna Better Health of Texas, Inc.,**
*Appellants,*

**v.**

**Cook Children's Health Plan, Texas Children's Health Plan, Superior Health Plan, Inc., and Wellpoint Insurance Company,**
*Appellees.*

On Appeal from Cause No. D-1-GN-24-003839, In the 455th Judicial District Court of Travis County, Texas / Honorable Laurie Eiserloh, Presiding Judge

**APPELLEES' JOINT MOTION TO DISMISS APPEALS OF AETNA BETTER HEALTH OF TEXAS, INC. AND MOLINA HEALTHCARE OF TEXAS, INC. FOR LACK OF JURISDICTION AND REQUEST FOR EXPEDITED CONSIDERATION**

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................... 1

REQUEST FOR EXPEDITED CONSIDERATION ............................................. 3

FACTUAL BACKGROUND............................................................................. 4

    I.      This Case Involves a Challenge to a Procurement That Will Determine Which Managed Care Organizations Will Provide Healthcare Coverage Under Texas' STAR & CHIP Programs For Years to Come ........................................................................ 4

    II.    Appellees File Suit Against the Commissioner Challenging the Procurement, and the Trial Court Issues Orders Denying the Commissioner's Plea to the Jurisdiction and Granting a Temporary Injunction Against the Commissioner ............................. 5

    III.    The Commissioner Appeals the Trial Court's Orders, and Aetna and Molina Belatedly Attempt to Intervene in the Trial Court After All Proceedings in the Trial Court Were Already Statutorily Stayed ........................................................................ 7

ARGUMENT.............................................................................................. 8

    I.      Aetna's and Molina's Appeals Should Be Dismissed Because Aetna and Molina Are Not Proper Intervenors to This Litigation ................................................................................... 8

        A.    Aetna and Molina Filed Their Petitions in Intervention Too Late ................................................................ 8

        B.    Aetna and Molina Cannot Circumvent the Automatic Stay By Arguing That They Were "Personally Aggrieved" By the Temporary Injunction ............................ 15

    II.    Aetna's and Molina's Appeals Should Be Dismissed Because the Virtual Representation Doctrine Does Not Authorize Aetna and Molina to Challenge the Trial Court's Orders........................... 18

i

A. The Virtual Representation Doctrine Is a Narrow One That Must Be Applied on a Case-By-Case Basis .................... 18

B. The Virtual Representation Doctrine Does Not Permit Aetna and Molina to "Intervene" in the Appeal of the Trial Court's Orders ........................................................ 20

    1. Aetna and Molina Cannot Satisfy the Virtual Representation Doctrine's Requirements as to the Trial Court's Order Denying the Commissioner's Plea to the Jurisdiction ................................................ 20

    2. Aetna and Molina Cannot Satisfy the Virtual Representation Doctrine's Requirements as to the Trial Court's Order Granting a Temporary Injunction ................................................................. 24

C. Equity Strongly Weighs Against Permitting Aetna and Molina to Appeal the Trial Court's Orders Based on the Virtual Representation Doctrine ............................................. 27

    1. Aetna's and Molina's Failure to Timely Intervene Is a Proper Basis for Dismissing Their Appeals ........... 28

    2. Aetna and Molina Do Not Allege That the Commissioner Is Unable to Advocate for Her Own Procurement Process ............................................ 30

    3. Appellees and the Commissioner Will Be Prejudiced If Aetna and Molina Are Permitted to Appeal the Trial Court's Orders ................................. 31

CONCLUSION ................................................................................ 33

CERTIFICATE OF CONFERENCE ............................................... 36

CERTIFICATE OF SERVICE ........................................................ 37

# INDEX OF AUTHORITIES

**PAGE**

**CASES**

*Alt v. U.S. E.P.A.*,
   758 F.3d 588 (4th Cir. 2014) ....................................................................... 29

*Bank of Am., N.A. v. Travis Cnty.*,
   No. 03-12-00749-CV, 2013 WL 2631720
   (Tex. App.–Austin June 4, 2013, no pet.)............................................... 19, 26

*Belton Indus., Inc. v. United States*,
   6 F.3d 756 (Fed. Cir. 1993) ......................................................................... 29

*Brown v. Freed*,
   No. 03-21-00556-CV, 2023 WL 9007331 (Tex. App.–Austin
   Dec. 29, 2023, pet. denied) (op. on rehearing) ............................................. 28

*Brown v. Gay Eng'g, Inc. v. Olivares*,
   461 S.W.3d 117 (Tex. 2015) ......................................................................... 14

*Chambers-Liberty Counties Navig. Dist. v. State*,
   575 S.W.3d 339 (Tex. 2019) .................................................................... 31, 33

*City of Houston v. Swinerton Builders, Inc.*,
   233 S.W.3d 4 (Tex. App.–Houston [1st Dist.] 2007, no pet.) .......................... 11

*Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*,
   271 S.W.3d 238 (Tex. 2008) ......................................................................... 14

*Elec. Reliability Council of Tex., Inc. v. CPS Energy*,
   648 S.W.3d 520 (Tex. App.–San Antonio 2021), *aff'd and rev'd on
   other grounds*, 671 S.W.3d 605 (Tex. 2023)...................................... 20, 22, 25

*Excelsior Ambulance Serv., Inc. v. United States*,
   126 Fed. Cl. 69, 72 (2016).............................................................................. 32

*Garza v. Fliedner*,
   No. 05-15-01067-CV, 2016 WL 7438756
   (Tex. App.–Dallas Dec. 27, 2016, pet. denied) ............................................. 30

*Herrera v. Mata*,
702 S.W.3d 538 (Tex. 2024) (per curiam) ........................................................ 14

*In re Geomet Recycling LLC*,
578 S.W.3d 82 (Tex. 2019) (orig. proceeding) ................................................... 9

*In re Helena Chemical Co.*,
286 S.W.3d 492 (Tex. App.–Corpus Christi–Edinburg 2009,
orig. proceeding).................................................................................... 10, 11

*In re Kinder Morgan Prod. Co., LLC*,
No. 11-20-00027-CV, 2020 WL 1467281
(Tex. App.–Eastland Mar. 26, 2020, no pet.) ................................................... 13

*In re Lumbermens Mut. Cas. Co.*,
184 S.W.3d 718 (Tex. 2006) (orig. proceeding) .................................. 18, 26, 28

*In re Univ. of Tex. MD Anderson Cancer Ctr.*,
No. 01-19-00202-CV, 2019 WL 3418568
(Tex. App.–Houston [1st Dist.] July 30, 2019, orig. proceeding)
(per curiam) (mem. op.)................................................................................ 13, 17

*LTTS Charter Sch., Inc. v. Palasota*,
293 S.W.3d 830 (Tex. App.–Dallas 2009), *rev'd on other grounds*,
344 S.W.3d 378 (Tex. 2011) (per curiam) ....................................................... 23

*Q'Max Am., Inc. v. Screen Logix, LLC*,
No. 01-15-00319-CV, 2016 WL 796838
(Tex. App.–Houston [1st Dist.] Mar. 1, 2016, no pet.) .............................. 15, 16

*San Jacinto River Auth. v. Gonzalez*,
657 S.W.3d 713 (Tex. App.–Houston [14th Dist.] 2022, no pet.).................... 13

*San Jacinto River Auth. v. Lewis*,
629 S.W.3d 768 (Tex. App.–Houston [14th Dist.] 2021, no pet.)................. 9, 11

*San Jacinto River Auth. v. Ogletree*,
594 S.W.3d 833 (Tex. App.–Houston [14th Dist.] 2020, no pet.).................... 11

*Sharp v. House of Lloyd, Inc.*,
815 S.W.2d 245 (Tex. 1991) ........................................................................... 14

*State v. Naylor*,
    466 S.W.3d 783 (Tex. 2015) ....................................................................*Passim*

*U.S. Bank & Trust Nat'l Ass'n as Trustee for RASC 2006-EMX5 v.*
*Kingman Holdings, LLC*,
    No 4:23-CV-00597-ALM-BD, 2025 WL 1553436
    (E.D. Tex. May 30, 2025)........................................................................ 18, 19

**STATUTES & RULES**

TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) ...................................................... 23

TEX. CIV. PRAC. & REM. CODE § 51.014(b)................................................... 2, 9, 17

TEX. CIV. PRAC. & REM. CODE § 51.014(c) ............................................................ 9

TEX. R. APP. P. 25.1(b) .......................................................................................... 17

TEX. R. APP. P. 25.1(c)........................................................................................... 17

TEX. R. APP. P. 25.1(g) .......................................................................................... 13

Pursuant to Texas Rule of Appellate Procedure 42.3(a), Appellees Cook Children's Health Plan, Texas Children's Health Plan, Superior Health Plan, Inc., and Wellpoint Insurance Company (collectively, "Appellees") file this Joint Motion to Dismiss the Appeals of Aetna Better Health of Texas, Inc. ("Aetna") and Molina Healthcare of Texas, Inc. ("Molina") for Lack of Jurisdiction and Request for Expedited Consideration. Appellees respectfully request that this Court: (1) dismiss Aetna's and Molina's appeals for lack of jurisdiction; and (2) rule on this Joint Motion before a merits briefing schedule is established. In support, Appellees show the following:[1]

## INTRODUCTION

This Court should dismiss Aetna's and Molina's appeals for lack of jurisdiction because Aetna and Molina are not proper parties to this litigation and, thus, lack standing to appeal the trial court's order denying the Commissioner's Plea to the Jurisdiction and order granting a temporary injunction ("the Orders"). Aetna and Molina did not bring suit; nor did anyone sue them. Although well aware of the

---

[1] As explained in a separate filing, Appellant Cecile Erwin Young, in Her Official Capacity as Executive Commissioner of the Texas Health and Human Services Commission, joins in the request to dismiss Aetna and Molina from this appeal for lack of jurisdiction on grounds that their attempt to intervene after the Commissioner filed her notice of appeal is precluded by the automatic stay under Texas Civil Practice and Remedies Code § 51.014(b) for the reasons set forth in Part I of the argument section of this motion.

1

proceedings below, they did not seek to participate. Only *after* the trial court issued the Orders and *after* the Commissioner appealed the Orders did Aetna and Molina file petitions in interventions in the trial court. But those belated filings were ineffective because they plainly violated the stay of all trial court proceedings automatically triggered by the Commissioner's notice of appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(b). Under Texas law, Aetna's and Molina's petitions in intervention do not take effect until after the automatic stay is lifted at the end of this appeal. Thus, Aetna and Molina are not parties and cannot appeal the Orders.

Aetna's and Molina's attempted interventions are not only legally ineffective but serve no purpose and add nothing to this appeal. The crux of this litigation, including this appeal, is whether the Commissioner is acting *ultra vires* in procuring Texas' STAR & CHIP and STAR Kids programs – programs through which millions of vulnerable Texans, consisting largely of children and expectant mothers, receive healthcare coverage. This litigation has nothing to do with what Aetna and Molina did or did not do. Aetna and Molina are simply two of the companies to whom the Commissioner has noticed her intent to award contracts as part of the STAR & CHIP procurement. The irrelevance of Aetna's and Molina's conduct and positions on the issues in this litigation are demonstrated by Aetna's and Molina's deliberate decision to sit on the sidelines as spectators – relying exclusively on the Commissioner to pursue their alleged interests and attempting to intervene only *after* the trial court

2

ruled against the Commissioner and the Commissioner appealed.

Aetna and Molina do not explain their dilatory tactics. Nor do they explain how they can defend the lawfulness of *the Commissioner*'s conduct in the procurement better than the Commissioner herself.

Aetna and Molina cannot use the virtual representation doctrine to intervene on appeal. Neither Aetna nor Molina is named in the Orders. Indeed, the Orders concern only the Commissioner's conduct and bind only her and her agents – not private health plans like Aetna and Molina who merely hope to obtain a contract from her. That alone is enough to dismiss Aetna's and Molina's appeals.

A second, independent reason for dismissal is that the equities weigh heavily against Aetna and Molina because of their unjustified dilatory conduct. Aetna and Molina gambled and lost by deliberately attempting to ride the Commissioner's coattails to victory in the trial court. This Court should not protect Aetna and Molina from their strategic missteps by making them parties when they failed to timely do so themselves. To the extent they wish to share their thoughts on the issues before this Court, Aetna and Molina may do so as *amici curiae*, but not as parties.

## REQUEST FOR EXPEDITED CONSIDERATION

Appellees respectfully request that this Court decide this motion before a merits briefing schedule is established because determining the proper parties to this appeal is a threshold issue necessary to avoid the prejudice Aetna's and Molina's

3

untimely and unjustified "interventions" will cause Appellees and the Commissioner.

## FACTUAL BACKGROUND[2]

**I.    This Case Involves a Challenge to a Procurement That Will Determine Which Managed Care Organizations Will Provide Healthcare Coverage Under Texas' STAR & CHIP Programs For Years to Come**

The Commissioner is currently administering a procurement that will determine, among other things, from which managed care organizations ("MCOs") Texas residents will receive health care coverage through the Medicaid State of Texas Access Reform ("STAR") program and the Children's Health Insurance Program ("CHIP") (collectively, "STAR & CHIP"). PX.38 at 5. This procurement is one of the largest in Texas history – involving contracts for up to twelve years that involve $10 billion in annual expenditures – and will impact how health care is provided to millions of Texas' most vulnerable children and expectant mothers. PX.38 at 6.[3] The Texas Health and Human Services Commission ("HHSC") is the

---

[2]    "CR.____" refers to the Clerk's Record. "____.RR.____" refers to the volume and page number of the original Reporter's Record. "PX.____" refers to Appellees' exhibits admitted at the hearing on Appellees' applications for temporary injunction, which can be found in Volumes 9-12 of the Reporter's Record.

[3]    In addition to STAR & CHIP, this procurement will also determine which MCOs will provide coverage under the Healthy Texas Women ("HTW") program. PX.38 at 5. STAR and CHIP assist vulnerable Texans with their healthcare needs in different ways. STAR is a Medicaid managed care program that provides coverage to pregnant women, newborns, children, and parents with limited income. 6.RR.103; CR.163. CHIP is not a Medicaid program. 6.RR.86, 103-04. It provides

4

regulatory agency in charge of administering Texas' Medicaid and CHIP programs, and it administers those programs by contracting with MCOs to co-ordinate and cover healthcare services for the programs' beneficiaries. PX.38 at 5.

After conducting a new procurement for STAR and CHIP, on March 7, 2024, HHSC issued a notice of intent to award, announcing the MCOs with which HHSC intended to contract to administer these programs for at least the next six – and potentially up to twelve – years. PX.95 at 1; 5.RR.203-04. Appellees learned that they **would not** receive STAR & CHIP contracts in some or all of the service areas for which they applied. *Id.* Instead, HHSC announced its intent to award those contracts to other MCOs, including Aetna and Molina. *Id*.

## II. Appellees File Suit Against the Commissioner Challenging the Procurement, and the Trial Court Issues Orders Denying the Commissioner's Plea to the Jurisdiction and Granting a Temporary Injunction Against the Commissioner

Appellees filed suit against the Commissioner, challenging the lawfulness of

---

low-cost health coverage for children whose families earn too much to qualify for Medicaid but are unable to afford commercial health insurance. *Id*.; CR.163. HTW is a Medicaid managed care program that provides, arranges, and coordinates family planning services, family planning-related services, and other preconception women's health services. PX.92 at 1-2. STAR Kids – which is the subject of another ongoing (and unlawful) procurement – is a separate Medicaid program that provides healthcare benefits to children with disabilities. 6.RR.103.

the STAR & CHIP procurement. CR.8-1137, 1419-1741, 1819-2292.[4] Appellees alleged *ultra vires* claims against the Commissioner and sought temporary injunctive relief to prevent her from awarding, signing, and/or implementing the contracts that she intended to award under the procurement as well as from proceeding with the STAR Kids procurement. *Id.* In response, the Commissioner filed a Plea to the Jurisdiction seeking dismissal of Appellees' claims. CR.2949-3110.

On October 4, 2024, following a multi-day hearing on the Commissioner's Plea to the Jurisdiction and Appellees' applications for temporary injunction, the trial court entered an order denying the Commissioner's Plea and granting a temporary injunction. CR.5875-84 (Exhibit "A"). In its temporary injunction, the trial court issued findings in support of its grant of temporary injunctive relief and ordered the following temporary injunctive relief against the Commissioner with respect to the STAR & CHIP procurement:

> "Defendant [the Commissioner] and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP [procurement] or to further the procurement or contracting processes for the STAR & CHIP [procurement]."

CR.5883.

---

[4] Appellees' lawsuits were separately filed in different courts (*id.*) but were subsequently consolidated upon the Commissioner's motion into a single proceeding from which this appeal was taken. *Id.*; CR.2463-2509, 2778.

**III.** **The Commissioner Appeals the Trial Court's Orders, and Aetna and Molina Belatedly Attempt to Intervene in the Trial Court After All Proceedings in the Trial Court Were Already Statutorily Stayed**

On October 21, 2024, at 6:12 p.m., the Commissioner, pursuant to Texas Civil Practice and Remedies Code §§ 51.014(a)(8) and 51.014(a)(4), filed a notice of appeal challenging the Orders. CR.5957-60.

On October 21, 2024, *several hours after* the Commissioner had perfected her appeal and all proceedings in the trial court had been stayed pursuant to Texas Civil Practice and Remedies Code § 51.014(b), Molina sought to intervene in the trial court and appeal the same orders the Commissioner had appealed. CR.5946-53, 5964-66. On October 22, 2024, Aetna did the same. CR.5970-72, 5976-80.

On November 12, 2024, this Court – upon Appellees and the Commissioner's joint motion – abated this appeal until July 2, 2025. Joint Mot. to Abate; 11/12/24 Abatement Order. In their joint motion to abate the appeal, Appellees and the Commissioner argued that Aetna and Molina were not proper parties to this appeal and stated that "[i]f and when briefing proceeds in this appeal, Appellant and Appellees will seek to dismiss the Putative Intervenors' appeals." Joint Mot. to Abate at 3-4. On June 30, 2025, Appellees, the Commissioner, Aetna, and Molina filed a joint status report requesting that this appeal be reinstated on July 3, 2025; notifying the Court that a motion to dismiss Aetna and Molina was forthcoming and proposing that said motion be filed on or before July 10, 2025; proposing responses

7

to the motion be filed on or before July 24, 2025; and requesting that the Court refrain from setting a merits briefing schedule until after such responses were filed. On July 3, 2025, the Court reinstated this appeal and adopted the proposed approach.

## ARGUMENT

The Supreme Court of Texas has held that "appellate standing is typically afforded 'only to parties of record'" and that "[s]tanding is a component of subject-matter jurisdiction." *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015). Thus, "an appeal filed by an improper party must be dismissed." *Id*. As shown below, Aetna's and Molina's appeals must be dismissed for lack of jurisdiction because they are not proper parties to this appeal under Texas law.

## I. Aetna's and Molina's Appeals Should Be Dismissed Because Aetna and Molina Are Not Proper Intervenors to This Litigation

### A. Aetna and Molina Filed Their Petitions in Intervention Too Late.

Aetna and Molina cannot rely on their filing of petitions in intervention in the trial court to establish that they are parties to this litigation with standing to appeal the Orders. Under Texas law, the petitions did not render Aetna and Molina parties because the petitions were filed while all trial court proceedings were statutorily stayed and, thus, will not take effect until after this appeal is over.

The orders that are the subject of this appeal are the trial court's October 4, 2024 orders denying the Commissioner's Plea to the Jurisdiction and granting a temporary injunction. CR.5875-84 (Exhibit "A"). On ***October 21, 2024, at 6:12***

8

*p.m.*, the Commissioner filed her notice of appeal seeking interlocutory review of both orders. CR.5957-60. The Commissioner's appeal of the trial court's order denying the Commissioner's Plea to the Jurisdiction pursuant to Texas Civil Practice and Remedies Code § 51.014(a)(8) triggered an immediate, automatic stay of *all* proceedings in the trial court pursuant to Texas Civil Practice and Remedies Code § 51.014(b). *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b) ("An interlocutory appeal under Subsection (a)(3), (5), (8), or (12) also stays all other proceedings in the trial court pending resolution of that appeal."); TEX. CIV. PRAC. & REM. CODE § 51.014(c) (describing stay under Section 51.014(b) as to appeals under Section 51.014(a)(8) as "automatic"); *San Jacinto River Auth. v. Lewis*, 629 S.W.3d 768, 774 (Tex. App.–Houston [14th Dist.] 2021, no pet.) ("[The appellant] filed its notice of interlocutory appeal under section 51.014(a)(8) on February 14, 2019, and thus [the appellant] was entitled to a stay of all court proceedings *as of that date*.") (citation omitted and emphasis added); *see also In re Geomet Recycling LLC*, 578 S.W.3d 82, 86 (Tex. 2019) (orig. proceeding) (describing stay of all proceedings in the trial court under Section 51.014(b) as "automatic[]").[5]

---

[5] Section 51.014(c) states that "[a] denial of a … plea to the jurisdiction described by Subsection (a)(5), (7), or (8) is not subject to the automatic stay under Subsection (b) unless the … plea to the jurisdiction is filed and requested for submission or hearing before the trial court not later than the later of: (1) a date set by the trial court in a scheduling order entered under the Texas Rules of Civil Procedure; or (2) the 180th day after the date the defendant files: (A) the original answer; (B) the first other responsive pleading to the plaintiff's petition; or (C) if the

9

Molina filed its petition in intervention on ***October 21, 2024, at 8:31 p.m.*** CR.5946-53. And Aetna filed its petition in intervention on ***October 22, 2024***. CR.5970-72, 5976-80. Thus, Aetna's and Molina's petitions in intervention were filed in the trial court ***after*** the Commissioner had already filed her notice of appeal under Section 51.014(a)(8) and, thus, ***after*** Section 51.014(b)'s automatic stay of all trial court proceedings had already taken effect. Consequently, the interventions can have ***no effect*** until after the stay has been lifted. The Corpus Christi Court of Appeals' decision in *In re Helena Chemical Co.*, 286 S.W.3d 492, 494, 497-98 (Tex. App.–Corpus Christi–Edinburg 2009, orig. proceeding) is on point.

In *Helena Chemical Co.*, plaintiff-aligned individuals filed a plea in intervention after the Supreme Court of Texas had entered in a stay in connection with a mandamus proceeding. *Id*. at 494-95. The Supreme Court ordered that "[a]ll underlying proceedings are stayed … pending further order of this Court." *Id*. at 494. The defendant later filed a motion in the trial court to strike the intervenors' plea in intervention because it was filed while the Supreme Court's stay was in

plaintiff files an amended pleading that alleges a new cause of action against the defendant and the defendant is able to raise a defense to the new cause of action under Subsection (a)(5), (7), or (8), the responsive pleading that raises that defense."). That requirement was satisfied here. The Commissioner's Plea was filed on September 16, 2024 (CR.2949-3110) and set for hearing on September 30, 2024 (CR.2943-45), which was less than 180 days after the Commissioner filed her original answer on July 12, 2024 in Cause No. D-1-GN-24-003839 (CR.1748-50), and on July 19, 2024 in Cause Nos. D-1-GN-24-004059 (CR.2313-15), D-1-GN-24-003874 (CR.2444-46), and D-1-GN-24-004327 (CR.2448-50).

effect. *Id*. at 495. The trial court denied the motion. *Id*.

The Court of Appeals reversed, striking the intervenor's plea in intervention on the ground that it did not take effect until the Supreme Court's stay was lifted:

> [W]e agree with the general rule that ***a pleading filed during the pendency of a court imposed stay must be considered ineffective for as long as the stay is in effect***, regardless of whether the entity filing the pleading was a party to the suit at the time the stay commenced. …
>
> …
>
> [A] plea in intervention made by an entity or individual that was not a party to the suit at the time the stay was imposed ought not to be considered entirely void, but rather must be considered effective as of the date the stay is eventually lifted.

*Id*. at 497-98 (emphasis added).

Other Texas courts agree that pleadings filed while a trial proceeding is stayed are ineffective until the stay is lifted. *See, e.g.*, *San Jacinto River Auth.*, 629 S.W.3d at 774-75 (amended petition filed while case was stayed under Section 51.014(b) was ineffective until interlocutory appeal under Section 51.014(a)(8) was disposed); *San Jacinto River Auth. v. Ogletree*, 594 S.W.3d 833, 842-43 (Tex. App.–Houston [14th Dist.] 2020, no pet.) (declining to give effect to party's amended petition filed while case was stayed under Section 51.014(b) pursuant to appeal under Section 51.014(a)(8)); *City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 8-9 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (same).

In its briefing in response to the Joint Motion to Abate, Aetna's only

11

responsive argument was that "a plea in intervention is not a proceeding, and thus the automatic stay pursuant to Tex. Civ. Prac. & Rem. Code 51.014(a)(8) is inapplicable to Aetna's Plea." Aetna's Resp. to Joint Mot. to Abate at 2. But Aetna does not cite any authority supporting that bare assertion and does not even attempt to distinguish any of the contrary authority. *Supra* at 10-11.

Molina, on the other hand, simply ignores Texas law in its response. First, Molina relies on clerical notations from the trial court's docket sheet and a notice from the Travis County District Clerk purporting to identify Molina as a party. Molina's Resp. to Joint Mot. to Abate at 4. Unsurprisingly, Molina fails to cite any legal authority for the remarkable proposition that a clerical notation supersedes Texas law. Second, Molina argues that it is a party below because "intervention is automatic." *Id*. at 4-5. Again, Texas courts disagree, holding that an intervention is not automatic if filed during a stay. Instead, it is ineffective until the stay is lifted. *Supra* at 10-11. That common-sense rule would not cause courts to go "haywire" as Molina contends. Molina's Resp. to Joint Mot. to Abate at 6. Molina argues that, under Appellees' construction of the stay rule, certain filings (*e.g.*, requests for clerk's and reporter's records, agreed records and statements of the case, bills of costs for preparing records, and even amended notices of appeal) would be impermissible. But they are ***appellate*** filings that the Texas Rules of Appellate Procedure authorize parties to file in the trial court without regard to whether the

12

trial court proceedings are stayed under Section 51.014(b). *Id.* (citing TEX. R. APP. P. 25.1(g), 26.1(d), 34.2, 34.5, 35.3).[6] Moreover, those appellate filings, unlike petitions in intervention, do not impact the trial court proceedings in any way.

Molina's next contention, that Section 51.014(b) "is best read to encompass only matters that require *action* by *the trial court*" (*id.* at 7), fails because that reading would permit parties to conduct full-blown discovery and engage in motion practice (short of obtaining rulings on those motions) while the statutory stay is in effect. *See, e.g.*, *San Jacinto River Auth. v. Gonzalez*, 657 S.W.3d 713, 724-25 (Tex. App.– Houston [14th Dist.] 2022, no pet.) (holding that written request asking trial court to rule on objections and objection to trial court's alleged refusal to rule on objections filed while case was stayed under Section 51.014(b) were ineffective); *In re Kinder Morgan Prod. Co., LLC*, No. 11-20-00027-CV, 2020 WL 1467281, at *4 (Tex. App.–Eastland Mar. 26, 2020, no pet.) ("The statutory stay is mandatory, and allows no room for discretion by the trial court. All proceedings, including discovery, are stayed pending the resolution of the interlocutory appeal.") (citations omitted); *In re Univ. of Tex. MD Anderson Cancer Ctr.*, No. 01-19-00202-CV, 2019 WL 3418568, at *3 (Tex. App.–Houston [1st Dist.] July 30, 2019, orig. proceeding) (per curiam) (mem. op.) (holding that motion to dismiss and expert report filed while case was

---

[6] Molina incorrectly states that amended notices of appeal are filed in the trial court. They are filed in the appellate court. TEX. R. APP. P. 25.1(g).

13

stayed under Section 51.014(b) were voidable and "ineffective for as long as the stay [was] in effect.") (quotation omitted). This Court should decline to adopt such an absurd construction of Section 51.014(b) that would render it meaningless. *See, e.g.*, *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991) ("In determining the meaning of a statute, a court must consider the entire act, its nature and object, and the consequences that would follow from each construction. Interpretations of statutes which would produce absurd results are to be avoided.") (citations omitted).

Permitting parties to engage in such costly and time-consuming activities in the trial court while all proceedings in the trial court are supposed to be stayed would be particularly nonsensical in appeals from the denial of pleas to the jurisdiction where the threshold issue being challenged is whether a court can hear the case or a party can be sued. *See, e.g.*, *Herrera v. Mata*, 702 S.W.3d 538, 541 (Tex. 2024) (per curiam) ("A plea to the jurisdiction challenges the existence of subject matter jurisdiction; that is, the court's power to decide the case."); *Brown v. Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) (benefit of immunity from suit is protecting against use of tax resources to pay for litigation expenses).

14

**B.**    **Aetna and Molina Cannot Circumvent the Automatic Stay by Arguing That They Were "Personally Aggrieved" By the Temporary Injunction**

Finally, Molina tries to circumvent the Section 51.014(b) stay by arguing that it is a proper appellant even without intervention in the trial court because "[a]n appellant need not be a party to a temporary injunction in order to have standing to appeal it, so long as the appellant is personally aggrieved by the entry of the temporary injunction and therefore, has a justiciable interest in the controversy." Molina's Resp. to Joint Mot. to Abate at 7-8 (quoting *Q'Max America, Inc. v. Screen Logix, LLC*, No. 01-15-00319-CV, 2016 WL 796838, at \*4 (Tex. App.–Houston [1st Dist.] Mar. 1, 2016, no pet.)).  But Molina's reliance on *Q'Max America, Inc.* is misplaced because that case involved an appeal by a party ***that was already a named defendant in the trial court*** when the temporary injunction entered, and as a result Section 51.014(b)'s automatic stay was not implicated in that case.

In *Q'Max America, Inc.*, Q'Max America, Inc. ("Q'Max") was a named defendant in the trial court, and Screen Logix sought to enjoin Screen Logix's former employees from performing under a consulting agreement with Q'Max.  *Id*. at \*1. The temporary injunction did not address Q'Max by name, but the Houston [1st Dist.] Court of Appeals held that Q'Max, as "the contractual counterparty to the enjoined parties," was "personally aggrieved" by the temporary injunction and, thus, had standing to appeal.  *Id*. at \*4.  *Q'Max America, Inc.* is readily distinguishable.

15

While Q'Max was not named in the temporary injunction, it was – unlike Aetna and Molina – a named defendant in the suit before the temporary injunction was entered. Moreover, the trial court in *Q'Max America, Inc.* enjoined the employees from participating in an ***existing*** contract with Q'Max, such that Q'Max was a "contractual counterparty" to the enjoined individuals. *Id*.

Not so here. There is no dispute that, at the time the trial court issued the temporary injunction in this case, neither Aetna nor Molina was a party to the lawsuit. Moreover, the Commissioner had merely issued a notice of intent to award contracts to Aetna and Molina, and neither had actually executed a contract with HHSC. CR.5950 (admission by Molina that it "is in line to effectuate and perform contracts resulting from or in connection with that procurement."); CR.5978 (admission by Aetna that "[b]ut for the Order, Aetna would be actively participating with HHSC in signing, entering into, executing, implementing, taking action to effectuate … contracts resulting from the STAR & CHIP [procurement]."). At issue in this appeal is the process by which the Commissioner conducted and is conducting the procurement and whether her actions in finalizing ***intended*** awards would be legal. Neither Aetna nor Molina stands on the same footing as Q'Max as a "contractual counterparty" to the enjoined party (the Commissioner), who was already a party to the litigation when the temporary injunction was entered.

Because Aetna and Molina, unlike Q'Max, were ***not*** parties to the underlying

litigation at the time the temporary injunction was imposed—or even when the Commissioner filed her notice of appeal—their separate notices of appeal, filed after the case was automatically stayed under Section 51.014(b), are insufficient to grant them a right to appeal. *See, e.g.*, TEX. R. APP. P. 25.1(c) ("A *party* who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal.") (emphasis added); TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any *party* invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from.") (emphasis added).

And because there was no question that Q'Max was already a party in the trial court before the case was appealed, its participation as a party in the appeal of the temporary injunction neither implicated nor violated Section 51.014(b)'s automatic stay. For that reason, the case offers no support for Aetna and Molina's attempt to avoid the consequences of their inaction and undermine the force of the automatic stay by intervening after the Commissioner appealed. A stay under Section 51.014(b) remains in effect "pending resolution of th[e] appeal." *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 51.014(b) (stays under Section 51.014(b) remain in effect "pending resolution of th[e] appeal."); *In re Univ. of Tex. MD Anderson Cancer Ctr.*, 2019 WL 3418568, at *3 (motion to dismiss and expert report filed while trial court proceedings were stayed under Section 51.014(b) did not take effect until mandate was issued after disposition of appeal). Accordingly, Aetna's and Molina's petitions

in intervention will not take effect until after this appeal is over, and they lack standing to appeal as parties to this litigation. Thus, Aetna's and Molina's appeals should be dismissed without further delay.[7]

## II. Aetna's and Molina's Appeals Should Be Dismissed Because the Virtual Representation Doctrine Does Not Authorize Aetna and Molina to Challenge the Trial Court's Orders

### A. The Virtual Representation Doctrine Is a Narrow One That Must Be Applied on a Case-By-Case Basis

Aetna and Molina argue, in the alternative, that they may appeal the trial court's orders under the virtual representation doctrine. Aetna's Resp. to Joint Mot. to Abate at 2-3; Molina's Resp. to Joint Mot. to Abate at 7-8. But this equitable doctrine is a "narrow" exception to the general rule that only parties can challenge a judgment. *See, e.g.*, *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723 (Tex. 2006); *U.S. Bank & Trust Nat'l Ass'n as Trustee for RASC 2006-EMX5 v. Kingman Holdings, LLC*, No 4:23-CV-00597-ALM-BD, 2025 WL 1553436, at *5 (E.D. Tex. May 30, 2025) (applying Texas law). The applicability of the doctrine "must be decided on a case-by-case basis" with sensitivity to its equitable nature. *In re Lumbermens Cas. Co.*, 184 S.W.3d at 728-29.

To trigger this narrow doctrine, Aetna and Molina must satisfy several

---

[7] Appellees file this motion to dismiss expressly subject to and without waiving their right to file a motion to strike Aetna's and Molina's petitions in intervention if and when they eventually take effect after this appeal has concluded.

18

requirements. *See, e.g.*, *Naylor*, 466 S.W.3d at 791 ("[T]he State cites no precedent in which we allowed a third party to appeal without first satisfying the essential elements of the virtual-representation doctrine."). Specifically, Aetna and Molina each must establish: "(1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment." *Id.* at 789.

The second element of the virtual representation doctrine – whether a non-party's "privity of estate, title, or interest appears from the record" – is largely subsumed in the "identity of interest" element. *See U.S. Bank & Trust Nat'l Ass'n as Trustee for RASC 2006-EMX5*, 2025 WL 1553436, at \*6 ("It is not clear how privity of interest differs from identity of interest, the third element of virtual representation."); *Bank of Am., N.A. v. Travis Cnty.*, No. 03-12-00749-CV, 2013 WL 2631720, at \*1 (Tex. App.–Austin June 4, 2013, no pet.) ("A privy is one so connected in law with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right.") (quotation omitted). Therefore, those two elements will be discussed together.

As shown below, Aetna and Molina cannot satisfy the doctrine's technical requirements. Furthermore, equitable considerations in this case independently and overwhelmingly support rejection of the doctrine to Aetna and Molina.

**B.** **The Virtual Representation Doctrine Does Not Permit Aetna and Molina to "Intervene" in the Appeal of the Trial Court's Orders**

In determining whether Aetna and Molina possess appellate standing, Aetna and Molina must be "a party to the challenged order, not just a party to the overall litigation." *Elec. Reliability Council of Tex., Inc. v. CPS Energy*, 648 S.W.3d 520, 532 (Tex. App.–San Antonio 2021), *aff'd and rev'd on other grounds*, 671 S.W.3d 605 (Tex. 2023). Molina and Aetna (and the Commissioner) challenge two orders – the trial court's order denying the Commissioner's Plea to the Jurisdiction and the trial court's order granting a temporary injunction. Aetna and Molina cannot satisfy the virtual representation doctrine's requirements as to either order.

**1.** **Aetna and Molina Cannot Satisfy the Virtual Representation Doctrine's Requirements as to the Trial Court's Order Denying the Commissioner's Plea to the Jurisdiction**

The virtual representation doctrine does not permit Aetna and Molina to appeal the trial court's order denying the Commissioner's Plea to the Jurisdiction. In denying the Commissioner's Plea, the trial court concluded that it had subject matter jurisdiction because **the Commissioner** acted and will act *ultra vires* and Appellees seek prospective injunctive relief. As shown below, Aetna and Molina are not bound by the trial court's order, and neither has an "identity of interest" with the Commissioner regarding her Plea to the Jurisdiction.

The Commissioner's Plea and the trial court's order denying the plea have nothing to do with Aetna and Molina. The Commissioner's Plea requested dismissal

20

of Appellees' claims against the Commissioner only.  CR.2959-86.  And the trial court's order denying the Commissioner's Plea only addresses whether the Commissioner is entitled to sovereign immunity.  CR.5876.  Specifically, the trial court found that: (1) "Plaintiffs [Appellees] have alleged and offered evidence demonstrating that **Defendant [the Commissioner]** will act *ultra vires* in awarding, executing, and implementing the contracts arising out of Request for Proposals No. HHS0011152 (the 'RFP' or 'STAR & CHIP RFP') because **she [the Commissioner]** has acted *ultra vires* in administering the RFP"; and (2) "Plaintiffs [Appellees] properly seek only prospective relief – specifically, injunctive relief prohibiting **Defendant [the Commissioner]** from awarding, executing, or otherwise implementing the intended RFP contracts and thus preventing further unlawful acts in connection with Defendant's procurement of contracting processes, as well as accompanying declaratory relief."  *Id.* (emphasis added).

Aetna and Molina are not bound by this order.  The order does not name them, restrain them, or obligate them.  They are not even parties to the case.  *See Naylor*, 466 S.W.3d at 789 (in determining whether a third party is "bound by the judgment," courts may look to, for example, whether the contested order financially obligates the third party in any respect or precludes the third party from exercising any of its rights).  Indeed, even a **party** to the underlying lawsuit cannot appeal an order on a plea to the jurisdiction if it is not named in – and, thus, bound by – the order.  The

21

San Antonio Court of Appeals' decision in *Electric Reliability Council of Tex., Inc. v. CPS Energy*, 648 S.W.3d 520 (Tex. App.–San Antonio 2021), *aff'd and rev'd on other grounds*, 671 S.W.3d 605 (Tex. 2023) is instructive.

In that case, CPS Energy – a municipally-owned utility – sued ERCOT for its allegedly improper increases in electricity prices during Winter Storm Uri. *Id*. at 526. CPS Energy also asserted *ultra vires* claims against ERCOT's former executives, including its former Chief Executive Officer, Bill Magness. *Id*. ERCOT – but not Magness – filed a plea to the jurisdiction, and the trial court denied the plea. *Id*. Both ERCOT and Magness, however, filed notices of appeal from the trial court's order denying ERCOT's plea. *Id*. at 527. CPS moved to dismiss Magness' appeal for lack of standing because he was not a party to ERCOT's plea. *Id*.

The Court of Appeals held that the virtual representation doctrine did not grant Magness appellate standing because "nothing in the record indicates Magness is bound by the trial court's order." *Id*. at 532. The Court noted that "ERCOT's plea does not request relief on Magness's behalf, and the order denying the plea does not mention Magness." *Id*. Furthermore, "[n]othing in the text of the order places any obligations on Magness or precludes him from exercising his legal rights." *Id.* The Court thus concluded that "[b]ecause Magness is not bound by the judgment, he may not rely on the doctrine of virtual representation to establish appellate standing." *Id*.

In this case, as in *CPS Energy*, the virtual representation doctrine cannot be

22

used to permit Aetna and Molina to appeal the trial court's order denying the Commissioner's Plea because the Commissioner's Plea did not request relief on Aetna and Molina's behalf, the Plea to the Jurisdiction requests relief on grounds that have no applicability to Aetna or Molina, the order denying that plea did not mention Aetna and Molina, and nothing in the order imposes any obligations on Aetna and Molina or precludes them from exercising their legal rights.

Finally, Aetna and Molina are private entities who cannot claim sovereign immunity and for whom the concept of *ultra vires* conduct is immaterial. Section 51.014(a)(8) only permits interlocutory appeals from orders denying a plea to the jurisdiction filed by ***a governmental unit***. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing interlocutory appeal of order that "grants or denies a plea to the jurisdiction by a ***governmental unit*** as that term is defined in Section 101.001.") (emphasis added). Thus, appeals by individuals or entities without governmental status – like Aetna and Molina – must be dismissed. *See LTTS Charter Sch., Inc. v. Palasota*, 293 S.W.3d 830, 839 (Tex. App.–Dallas 2009), *rev'd on other grounds*, 344 S.W.3d 378 (Tex. 2011) (per curiam). For this additional reason, Aetna and Molina share no identity of interest with the Commissioner.

Because they are not bound by the trial court's order denying the Commissioner's Plea to the Jurisdiction and share no identity of interest with the Commissioner regarding that order, Aetna and Molina may not appeal that order

23

under the virtual representation doctrine.

## 2. Aetna and Molina Cannot Satisfy the Virtual Representation Doctrine's Requirements as to the Trial Court's Order Granting a Temporary Injunction

The virtual representation doctrine also does not permit Aetna and Molina to appeal the trial court's order granting a temporary injunction against the Commissioner. Again, Aetna and Molina are not bound by the temporary injunction order and share no "identity of interest" with the Commissioner regarding that order.

First, Aetna and Molina are not bound by the relief granted by the temporary injunction. The temporary injunction prohibits *the* Commissioner – not Aetna or Molina – from continuing with the STAR & CHIP and STAR Kids procurements. Molina nonetheless points to a passage in the temporary injunction saying that it applies to "Defendant, and all other persons or entities ***in active concert or participation with Defendant***" as evidence the order is binding on them. Molina's Resp. to Joint Mot. to Abate at 7-8; CR.5883 (emphasis added). But that argument does not hold up when the highlighted language is considered in the context of the nature of the procurement or the specific relief Appellees requested below.

For example, in their Prehearing Brief filed prior to the trial court's granting a temporary injunction, Appellees asked the trial court "to enjoin ***Defendant*** from engaging in *ultra vires* action by finalizing or executing unlawful contracts arising from HHSC's Request for Proposals No. HHS0011152 … for the provision of

managed care services for the State of Texas Access Report ('STAR') Medicaid program and the Children's Health Insurance Program ('CHIP') ...."  CR.3124 (emphasis added).  Appellees' petitions and applications for temporary injunctions similarly focused on enjoining **Defendant** from engaging in *ultra vires* action (which, again, is a category of prohibited action that does not apply to private parties like Aetna and Molina).  CR.3399, 3552-56, 4276-79, 4750-60.  The absence of references to Aetna and Molina makes sense.  Aetna and Molina were not parties to the case, and the case is about the Commissioner's actions, not theirs.  The Commissioner also cannot be acting "in active concert" with Aetna and Molina in conducting the procurement.  Black-letter government contracting law requires the Commissioner to act independently, not "in active concert" with any bidder.

While Aetna and Molina may argue that the temporary injunction *affects* them, potentially being *affected* by the temporary injunction is not the same as being *bound* by it.  Otherwise, the millions of STAR and CHIP beneficiaries in Texas or any of the healthcare providers who contract with MCOs providing coverage under the STAR & CHIP programs could argue that they may appeal the trial court's temporary injunction order under the virtual representation doctrine because that order affects from whom they receive coverage or with whom they contract.  "Affected" is not "bound." *See, e.g.*, *Elec. Reliability of Council of Tex., Inc.*, 648

S.W.3d at 532 ("An appealing party lacks standing to challenge trial court errors that 'merely affect the rights of others.'").

Second, there is no identity of interest between Aetna and Molina, on the one hand, and the Commissioner, on the other hand, in connection with the trial court's temporary injunction. Aetna and Molina's interest, if any, would be limited solely to the portion of the STAR & CHIP procurement supporting the Commissioner's notice of intent to award *Aetna's and Molina's individual awards only* – without regard to the other elements of the procurement. The Commissioner's interest, however, is in establishing the legality of *the entire STAR & CHIP procurement process as well as the STAR Kids process*, not in ensuring that it results in contracts to Aetna or Molina.

While entities may share an "identity of interest[]" "when their "ultimate aim" in the litigation "remains the same" (*In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d at 724), that is not the case here, where the Commissioner did not "represent[] the same legal right" asserted by Aetna and Molina. *Bank of Am., N.A.*, 2013 WL 2631720, at *1 (characterizing an entity as having a privity of interest for purposes of the virtual representation doctrine if the party to the judgment "represented the same legal right.'"). The Commissioner's interest in the legality of her procurement process (*i.e.*, the lawfulness of *her administration* of that process) is not the same as Aetna's and Molina's exclusive interest in *particular results* of that process – a

signed contract with HHSC. For example, the Commissioner's briefing in this case establishes that "[t]his lawsuit concerns *HHSC's procurement process* by which it invited [MCOs] to bid for contracts to provide Medicaid services to recipients of Medicaid benefits through the [STAR and CHIP] programs." CR.4198 (emphasis added). Aetna's and Molina's briefing in this appeal, however, establish that they are merely interested in protecting their *individual notice of awards and potential contracts* from HHSC. *See* Aetna Resp. to Joint Mot. to Abate at 3 (Aetna's "interest" in "award of a contract with HHSC" is "at stake"); Molina Resp. to Joint Mot. to Abate at 2 ("Molina is the recipient of a notice of award[.]").

Because they are not bound by the trial court's order granting a temporary injunction against the Commissioner and share no identity of interest with the Commissioner regarding that order, Aetna and Molina also may not appeal that order under the virtual representation doctrine.

C. **Equity Strongly Weighs Against Permitting Aetna and Molina to Appeal the Trial Court's Orders Based on the Virtual Representation Doctrine**

Aetna and Molina must also justify their participation in the appeal on equitable principles. Even if Aetna and Molina could satisfy the technical requirements for application of the virtual representation doctrine (they cannot), the Supreme Court of Texas has held that courts may still bar non-parties from participating in an appeal if their participation would be unjust to the existing parties

27

in the appeal. *See, e.g.*, *Naylor*, 466 S.W.3d at 791 ("[E]ven where a third party satisfies the virtual-representation doctrine, intervention may yet be denied when it is unjust to existing parties."); *see also In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d at 725 ("But because the doctrine is equitable, we must determine whether other considerations weigh against applying the doctrine to allow [the third party's] intervention on appeal."); *Brown v. Freed*, No. 03-21-00556-CV, 2023 WL 9007331, at *2 n.4 (Tex. App.–Austin Dec. 29, 2023, pet. denied) (op. on rehearing) (mem. op.) ("Even when these requirements of the [virtual representation] doctrine are met, an appellate court must also evaluate whether other equitable considerations weigh against allowing the nonparty to intervene on appeal, such as unnecessary delay and prejudice to existing parties.").[8]  Here, equity weighs heavily against application of the doctrine to Aetna and Molina.

### 1.    Aetna's and Molina's Failure to Timely Intervene Is a Proper Basis for Dismissing Their Appeals

Aetna's and Molina's failure to timely intervene in this litigation justifies dismissal of their appeals.  Aetna and Molin have never argued, much less proven, that there was any obstacle to their intervening immediately after Appellees filed the present lawsuits.  Nor have they ever attempted to justify their delay.  For whatever

---

[8]    The converse, however, is not true.  Equitable considerations supporting Aetna and Molina's participation in this appeal (assuming any exist) cannot create appellate standing.  *Naylor*, 466 S.W.3d at 791.

reason – whether it be the desire to save money by letting the Commissioner do the heavy lifting or some other misbegotten strategy – Aetna and Molina chose not to seek intervention until after the trial court had already issued its orders. Even then, they delayed another 18 and 17 days, respectively – after the Commissioner appealed those orders and all trial court proceedings were stayed – before finally attempting to intervene. *Cf. Belton Indus., Inc. v. United States*, 6 F.3d 756, 762 (Fed. Cir. 1993) (denying untimely motion to intervene where movants "were content to sit on the sidelines during this dispute and let other parties, particularly the United States Government, do the heavy lifting" and "sought to intervene only when they realized, too late, that these other parties would not do all of their work for them."); *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (finding "little sympathy" where intervenor "gambled and lost in the execution of its litigation strategy"). Based on these undisputed facts, Aetna and Molina cannot legitimately argue that equity (or Texas law) somehow **mandates** that they be allowed to participate in this appeal when they could not be bothered to participate in the trial court in a timely manner.

The Supreme Court of Texas has held that a failure to timely intervene in the trial court is a proper basis to deny intervention:

> The record reveals that the State, while fully aware of the public import of this private dispute, had adequate opportunity to intervene and simply failed to diligently assert its rights. This is not a case in which the State was unaware of the litigation or blindsided by the result. On the contrary, the State concedes it had monitored this ongoing dispute for months and could have intervened if it had chosen to do so. Indeed,

29

the State had recently intervened in a similar dispute and so had already prepared its legal arguments. So it likely would have required relatively little effort for the State to file a petition in intervention or submit an amicus letter informing the trial court of its concerns. Yet there is no record that the State made any such effort until the trial court rendered judgment.

*Naylor*, 466 S.W.3d at 792 (citations omitted). The same reasoning supports prohibiting Aetna and Molina from participating in this appeal when they have not even attempted to justify their failure to timely intervene. *See Garza v. Fliedner*, No. 05-15-01067-CV, 2016 WL 7438756, at *5 (Tex. App.–Dallas Dec. 27, 2016, pet. denied) (denying appellate intervention based on virtual representation doctrine due to movant's delay: "One who fails to act diligently cannot evoke equitable principles to excuse the lack of diligence.") (quotation omitted).

### 2. Aetna and Molina Do Not Allege That the Commissioner Is Unable to Advocate for Her Own Procurement Process

Aetna and Molina also do not argue, much less prove, that some aspect of the Commissioner's strategy, arguments, or interests changed in a manner that caused them to seek intervention as late as they did. The Supreme Court of Texas recently rejected application of the virtual representation doctrine when an existing party to the appeal adequately represented the putative appellant's interests, noting that the putative intervenor's request for virtual-representation status "would be much stronger" if the existing party had "abandoned its litigation posture, leaving [the putative intervenor] without appellate review of arguments it wishes to make to

preserve its interest." *Chambers-Liberty Counties Navig. Dist. v. State*, 575 S.W.3d 339, 355 (Tex. 2019). Instead, the Court found that the existing party "has remained an able advocate, throughout the appellate process." *Id.*

Critically, neither Aetna nor Molina has suggested that the Commissioner will not be (or has not been) an able advocate of her own procurement process on appeal. As in *Chambers*, this further weighs against application of the doctrine here.

### 3. Appellees and the Commissioner Will Be Prejudiced If Aetna and Molina Are Permitted to Appeal the Trial Court's Orders

The equities further argue against Aetna and Molina's participation in this appeal because it would prejudice Appellees and the Commissioner. As parties, Aetna and Molina would have rights unavailable to *amici curiae*, such as the right to participate at oral argument, the right to contest motions (including case-dispositive motions), and the right to appeal an adverse decision.

First, Aetna and Molina could prevent the Commissioner from exercising control over her appeal, with potentially adverse consequences for Appellees. For example, if this Court affirms the trial court's orders and the Commissioner concludes that it does not wish to further appeal, Aetna and Molina could seek to appeal against the Commissioner's wishes. This risk is particularly prejudicial where the focus of this litigation is the lawfulness of the Commissioner's – not Aetna's and Molina's – conduct.

31

Second, Aetna and Molina could attempt to interfere with any potential agreements Appellees and the Commissioner may wish to reach – *e.g.*, a potential dismissal of the Commissioner's appeal in part or in full based on unilateral action by the Commissioner or an agreement with Appellees, *etc*.

Third, allowing Aetna and Molina to participate as parties will unduly complicate the appeal. *Cf. Excelsior Ambulance Serv., Inc. v. United States*, 126 Fed. Cl. 69, 72 (2016) ("If LMC were permitted to intervene at this stage and bring an appeal, [the parties] would expend additional time and resources to litigate issues that were, or should have been, raised while the protest was pending before the court. This waste of additional time and resources is prejudicial to [the parties], and outweighs any prejudice to LMC."). Aetna and Molina, of course, could offer their perspectives on the issues in this appeal to this Court as *amici curiae*.

The above equitable considerations not only independently support granting this Joint Motion to Dismiss Aetna's and Molina's Appeals but also support this Court's resolution of that motion at the ***beginning*** rather than the end of this appeal. While appellate courts may choose to carry motions with an appeal, the risk of material prejudice from Aetna and Molina's participation in this appeal merits expedited disposition of this Joint Motion before such prejudice occurs.

Finally, there are no compelling countervailing equitable considerations that would support application of the virtual representation doctrine to Aetna and Molina,

particularly when Aetna's and Molina's status as non-parties in this appeal is solely their own doing. Nevertheless, to the extent Aetna and Molina wish to have their voices heard in this appeal regarding the merits of the trial court's orders at issue, they may do so as all non-parties may do – by filing an amicus brief. *See Chambers-Liberty Counties Navig. Dist.*, 575 S.W.3d at 356 (denying application of virtual representation doctrine to nonparty, which had "every opportunity to have its arguments considered as an amicus curiae").

## CONCLUSION

For the reasons herein, Appellees respectfully request that this Court grant their Joint Motion to Dismiss the Appeals of Aetna Better Health of Texas, Inc. and Molina Healthcare of Texas, Inc. for Lack of Jurisdiction and Request for Expedited Consideration and: (1) dismiss Aetna's and Molina's appeals; (2) rule on the Joint Motion as soon as practicable after this appeal is reinstated and before this appeal proceeds any further, including before a briefing schedule is established; and (3) grant Appellees all other relief to which they are entitled.

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By /s/ Warren S. Huang
    Susan Feigin Harris
    State Bar No. 06876980
    susan.harris@nortonrosefulbright.com
    Warren S. Huang
    State Bar No. 00796788
    warren.huang@nortonrosefulbright.com
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151

Paul D. Trahan
State Bar No. 24003075
paul.trahan@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201

Thomas A. Coulter
tom.coulter@nortonrosefulbright.com
State Bar No. 04885500
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW, Suite 1100
Washington, D.C. 20001
Telephone: (202) 662-0200

*Counsel for Appellee Texas Children's Health Plan*

ALEXANDER DUBOSE & JEFFERSON

By /s/ Amy Warr
    Amy Warr
    State Bar No. 00795708
    awarr@adjtlaw.com
    Anna M. Baker
    State Bar No. 00791362
    abaker@adjtlaw.com
100 Congress Avenue, Suite 1450
Austin, Texas 78701-2709
Telephone: (512) 482-9300

Karen C. Burgess
State Bar No. 00796276
kburgess@burgesslawpc.com
Katie Dolan-Galaviz
State Bar No. 24069620
kgalaviz@burgesslawpc.com
BURGESS LAW PC
404 West 13th Street
Austin, Texas 78701-1825
Telephone: (512) 482-8808

Matthew P. Gordon
mgordon@perkinscoie.com
*Admission Pro Hac Vice*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359-8000

*Counsel for Appellee Plaintiff Cook Children's Health Plan*

34

FOLEY & LARDNER LLP

By /s/ Stacy R. Obenhaus
    Robert F. Johnson III
    State Bar No. 10786400
    rjohnson@foley.com
600 Congress Avenue, Suite 3000
Austin, Texas. 78701
Telephone:  (512) 542-7000

Michelle Y. Ku
State Bar No. 24071452
mku@foley.com
Stacy R. Obenhaus
State Bar No. 15161570
sobenhaus@foley.com
FOLEY & LARDNER LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201
Telephone:  (214) 999-3000

Benjamin J. Grossman
*Admission Pro Hac Vice*
bjgrossman@foley.com
FOLEY & LARDNER LLP
106 East College Avenue, Suite 900
Tallahassee, Florida 32301
Telephone:  (850) 222-6100

*Counsel for Appellee Wellpoint
Insurance Company*

HOLLAND & KNIGHT LLP

By /s/ Richard B. Phillips, Jr.
    Richard B. Phillips, Jr.
    State Bar No. 24032833
    rich.phillips@hklaw.com
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  (214) 964-9500

Karen D. Walker
*Admission Pro Hac Vice*
karen.walker@hklaw.com
Tiffany Roddenberry
*Admission Pro Hac Vice*
tiffany.roddenberry@hklaw.com
HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600
Tallahassee, Florida 32301
Telephone:  (850) 425-5612

*Counsel for Appellee Superior
Health Plan, Inc.*

# CERTIFICATE OF CONFERENCE

Putative Appellants Aetna Better Health of Texas, Inc. and Molina Healthcare of Texas, Inc. expressed in the Joint Status Report filed in this Court on June 30, 2025 that they intend to file a response to this motion on or before July 24, 2025. Counsel for Appellees also has conferred with counsel for the Commissioner regarding the filing of this motion. The Commissioner takes no position on this motion.

    /s/ Warren S. Huang    
Warren S. Huang

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a copy of Appellees' Joint Motion to Dismiss the Appeals of Aetna Better Health of Texas, Inc. and Molina Healthcare of Texas, Inc. for Lack of Jurisdiction and Request for Expedited Consideration was served in compliance with Texas Rule of Appellate Procedure 9.5 via the electronic filing manger or electronic mail on July 10, 2025, upon all counsel of record:

Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
William R. Peterson
Solicitor General
William F. Cole
Principal Deputy Solicitor General
william.cole@oag.texas.gov
Cory A. Scanlon
Assistant Solicitor General
cory.scanlon@oag.texas.gov
Thomas Bevilacqua
Assistant Attorney General
Jennifer Cook
Assistant Attorney General
Stephanie A. Criscione
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 Capitol Station
Austin, Texas 78711-25848

*Counsel for Appellant Cecile Erwin Young,*
*In Her Official Capacity as Executive*
*Commissioner of the Texas Health and*
*Human Services Commission*

Joseph R. Knight
jknight@ebbklaw.com
EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701

*Counsel for Aetna Better Health of Texas, Inc.*

Cheryl Joseph LaFond
clafond@scottdoug.com
Jason LaFond
jlafond@scottdoug.com
SCOTT, DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701

*Counsel for Molina Healthcare of Texas, Inc.*

    /s/ Warren S. Huang
        Warren S. Huang



# EXHIBIT "A"

CAUSE NO. D-1-GN-24-003839

| | | |
|---|---|---|
| COOK CHILDREN'S HEALTH PLAN;<br>TEXAS CHILDREN'S HEALTH PLAN;<br>SUPERIOR HEALTHPLAN, INC.; and<br>WELLPOINT INSURANCE COMPANY, | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| v. | § § | TRAVIS COUNTY, TEXAS |
| CECILE ERWIN YOUNG, in her official<br>capacity as Executive Commissioner of the<br>Texas Health and Human Services<br>Commission, | § § § § § | |
| Defendant. | § § | 353rd JUDICIAL DISTRICT |

## TEMPORARY INJUNCTION AND ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION

Before the Court are the Applications for Temporary Injunction (the "Applications") filed by Plaintiffs Cook Children's Health Plan ("Cook Children's"), Texas Children's Health Plan ("TCHP"), Superior HealthPlan, Inc. ("Superior"), and Wellpoint Insurance Company ("Wellpoint," and collectively, "Plaintiffs"); and the Plea to the Jurisdiction (the "Plea") filed by Defendant Cecile Erwin Young ("Defendant"), in her official capacity as Executive Commissioner of the Texas Health and Human Services Commission ("HHSC"). After considering Plaintiffs' Applications and Defendant's response; Defendant's Plea and Plaintiffs' responses; the pleadings and attached evidence in these consolidated cases (Nos. D-1-GN-24-003839, D-1-GN-24-003874, D-1-GN-004059, and D-1-GN-24-004327); the parties' prehearing briefing; the evidence admitted in the record and adduced at the hearing held on September 30, October 1, October 2, and October 4, 2024; applicable authorities; the arguments of counsel, and all other matters properly before the Court, the Court DENIES Defendant's Plea and GRANTS Plaintiffs' Applications.

Page 1 of 10

The Court makes the following findings:

1. The Court has subject-matter jurisdiction over the claims in these consolidated cases because Plaintiffs have alleged and offered evidence demonstrating that Defendant will act *ultra vires* in awarding, executing, and implementing the contracts arising out of Request for Proposals No. HHS0011152 (the "RFP" or "STAR & CHIP RFP") because she has acted *ultra vires* in administering the RFP. Plaintiffs properly seek only prospective relief—specifically, injunctive relief prohibiting Defendant from awarding, executing, or otherwise implementing the intended RFP contracts and thus preventing further unlawful acts in connection with Defendant's procurement or contracting processes, as well as accompanying declaratory relief. Accordingly, sovereign immunity does not bar Plaintiffs' claims or deprive the Court of subject-matter jurisdiction.

2. The Court has personal jurisdiction over the parties in these consolidated cases.

3. Venue is proper in this Court.

4. Through the RFP, Defendant sought to procure managed care services for the State of Texas Access Reform ("STAR") Medicaid program and the Children's Health Insurance Program ("CHIP," and together with STAR, "STAR & CHIP").

5. Plaintiffs allege that Defendant administered the RFP in a manner that violates Texas law and that, consequently, any award, execution, or implementation of the intended STAR & CHIP managed care contracts that Defendant announced on March 7, 2024, will constitute *ultra vires* acts.

6. Plaintiffs have established a cause of action against Defendant and a probable right to the relief sought on their claims that Defendant has violated and, unless enjoined, will continue to violate statutory and regulatory requirements applicable to the RFP.

7.     Specifically, Plaintiffs have established that Defendant has violated and will continue to violate the Texas Government Code, Texas Health and Safety Code, and Texas Administrative Code in procuring managed care contracts for STAR & CHIP in Texas, and that any award, execution, or implementation of Defendant's intended contract awards would be unlawful, because:

- Defendant's intended contract awards will fail to give preference to managed care organizations ("MCOs") that have significant participation in their provider networks from each healthcare provider in the region who has traditionally provided care to Medicaid and charity care patients as required by Texas Government Code § 533.003(a)(1);

- Defendant's intended contract awards will fail to give preference to MCOs that have successfully implemented quality initiatives as required by Texas Government Code § 536.052(a) and (d);

- Defendant has failed to develop and implement the cost-efficiency and quality of care benchmarks mandated by Texas Government Code § 536.052(b) despite being subject to an obligation to do so for over a decade. Defendant's intended contract awards will likewise fail to give preference to MCOs that have met such benchmarks as required by Texas Government Code § 536.052(d);

- Defendant's intended contract awards will fail to consider MCOs' past performances as required by Texas Government Code § 2155.144;

- Defendant's intended contract awards will fail to evaluate and certify that MCOs are reasonably able to fulfill the terms of the STAR contract as required by Texas Government Code § 533.0035 and to review MCOs to confirm their ability to fulfill the requirements of the CHIP contract as required by Texas Health & Safety Code § 62.051(e);

- In August 2023 and again in October 2023, Defendant wrongfully disclosed the RFP proposals of Plaintiffs and other respondents—with the August disclosure recipients including legal counsel for Aetna, one of the competing respondents, while the procurement was ongoing and prior to completion of the oral presentations—thus, destroying any integrity of the procurement process and creating an unlevel playing field that cannot ensure fair consideration of all proposals and is far from consistent, uniform, and transparent as required by 1 Texas Administrative Code §§ 391.101 and 391.209;

- Defendant's intended contract awards will fail to implement the Medicaid managed care program in a manner that improves the health of Texans by promoting

continuity of care and provides a medical home for recipients as required by Texas Government Code § 533.002;

- Defendant's intended contract awards will fail to reduce administrative and other nonfinancial barriers for recipients as required by Texas Government Code § 533.002;

- Defendant's intended contract awards will fail to consider the need to use different managed care plans to meet the needs of different populations as required by Texas Government Code § 533.003(a)(3);

- Defendant's intended contract awards will unlawfully award mandatory CHIP contracts to MCOs to which Defendant intends to award mandatory STAR contracts in violation of Texas Health and Safety Code §§ 62.055 and 62.155;

- Defendant's intended award of mandatory CHIP contracts will fail to give consideration to statutorily required factors, including those under Texas Government Code § 533.003, in violation of Texas Government Code § 533.004(a);

- Defendant's continuing practice of denying relevant information about a procurement to bidders until after the deadline to submit a bid protest violates the Due Course of Law provision of Article I, Section 13 of the Texas Constitution by not providing a meaningful bid protest process after promising one in 1 Texas Administrative Code Chapter 391; and

- Defendant's continuing practice of refusing to consider as untimely any information submitted in supplemental protests and/or after the protest filing deadline is inconsistent with the procedural protections promised to protestants in bid protest rules that require consideration of a protest or appeal submitted after the filing deadline when good cause for delay is shown under 1 Texas Administrative Code § 391.307(d)(1).

8.      These statutory and regulatory violations, each singly and together collectively, have resulted in intended contract awards that will be invalid and unlawful, and the further execution and implementation of such intended contract awards will be *ultra vires* acts.

9.      Furthermore, Defendant is currently evaluating bids for STAR Kids, a separate Texas Medicaid managed care program, through Request for Proposals No. HHS0013071 (the STAR Kids RFP"). The procurement processes in the STAR & CHIP RFP and the STAR Kids RFP are substantively identical. Plaintiffs have demonstrated that Defendant has no intention of

voluntarily correcting her course of action for future procurements, including altering the processes and procedures used in administering the STAR Kids RFP. The resulting STAR Kids contract awards will therefore also violate statutory and regulatory requirements and be *ultra vires*.

10.    Plaintiffs have established a probable right to relief and that Defendant's award, execution, and implementation of the intended, unlawfully procured STAR & CHIP contracts will, if not enjoined, cause Plaintiffs to suffer imminent and irreparable injury.

11.    Cook Children's has established that execution and implementation of the contracts would result in irreparable harm to Cook Children's because:

- The loss of STAR & CHIP contracts threatens Cook Children's financial viability and might lead to the forced wind-down of the entity;

- Cook Children's participation in the STAR Kids program is in jeopardy because the larger STAR & CHIP contracts provide economies of scale to limit losses from STAR Kids;

- Cook Children's 100,000-plus STAR & CHIP members will be forced to change to different health plans from different companies, risking disruption to the members' healthcare and their access to their current primary care providers, specialty care providers, or both;

- Cook Children's has suffered immediate operational disruptions, including hiring difficulties and the delay of needed internal projects;

- Cook Children's can no longer negotiate a new pharmacy benefits contract alongside other Texas-only Medicaid plans and consequently will need to pay more for pharmaceuticals;

- Cook Children's 375 employees are at risk of losing their jobs—both the 70% of employees who focus on STAR & CHIP and the 30% who focus on STAR Kids; and

- New STAR & CHIP entrants in the Tarrant Service Area will likely poach Cook Children's experienced employees before the new contracts go into effect—thus threatening Cook Children's STAR & CHIP operations while it is still required to provide services under its current contracts.

12.    TCHP has established that execution and implementation of the contracts would result in irreparable harm to TCHP because:

- TCHP's 425,000 STAR & CHIP members will be forced to change their health plans, impacting their access to care;

- TCHP has suffered and will continue to suffer disruptions in workforce—threatening the future viability of the health plan—as employees voice concern about job security in light of the intended contract awards;

- TCHP's 650 employees are at risk of losing their jobs, impacting the financial health of its entire Texas Children's Health Care System beyond that of the health plan;

- TCHP has already suffered and will continue to suffer the poaching of its well-trained employees by other MCOs—further endangering its operations while it remains under contract with HHSC;

- TCHP will lose members and providers, further threatening the viability of the health plan and confusing members and providers;

- TCHP has and will suffer damage to its reputation and goodwill; and

- TCHP's participation in the STAR Kids program is at risk because the larger STAR & CHIP contracts are needed to provide economies of scale to limit losses from STAR Kids. If TCHP loses its STAR Kids contract, its 26,000 STAR Kids members would need to change their health plans, thereby adversely impacting those members' access to care, adversely impacting TCHP's workforce, adversely impacting TCHP's ability to operate and damaging TCHP's reputation and goodwill.

13.    Superior has established that execution and implementation of the contracts would result in irreparable harm to Superior because:

- Superior will experience a reduction in the number of STAR & CHIP members it serves today, forcing members to change plans even before the operational start date of the new contracts;

- Superior will need to begin reducing its workforce just as new MCO entrants and MCOs expanding their membership will seek to poach Superior's employees, who are already grappling with the uncertainty of their jobs in light of the intended awards;

- Providers will be less likely to contract with Superior as contract renewals are being negotiated over the next few months and Superior's leverage in provider contract negotiations will be substantially diminished;

Superior has made substantial investments in partnerships that promote HHSC's value-based care priorities. These partnerships involve risk-sharing agreements



between Superior and the partner entities and have been built to scale over time. Superior will lose the benefit of its initial investments in these partnerships; and

- Superior's ability to provide the same level of service currently provided under existing STAR & CHIP contracts through the August 31, 2025, expiration date will be diminished due to workforce challenges that would be caused by execution of the STAR & CHIP contracts, which will impact Superior's operations and cause it to suffer reputational damage.

14. Wellpoint has established that execution and implementation of the contracts would result in irreparable harm to Wellpoint because:

- Almost 380,000 current Wellpoint members will be forced to change their health plan, thus losing access to their existing Wellpoint provider network;

- Wellpoint will be forced to consider substantial reductions in and/or relocations of its existing 1,200-plus-person workforce dedicated to the Texas Medicaid programs;

- Wellpoint has already suffered and will continue to suffer the poaching of its highly trained employees by other MCOs. During the review and transition period, which HHSC has stated will take at least a full year, Wellpoint must continue to provide uninterrupted healthcare to its members, and its ability to do so will be substantially jeopardized if there are key staff vacancies;

- Wellpoint has already suffered and will continue to suffer difficulty retaining its existing, robust provider network in the impacted service areas. Maintaining its network of healthcare providers is critical to Wellpoint's commitment to providing high-quality, cost-efficient healthcare for the entire duration of its existing contracts. Worse yet, Wellpoint has learned that some providers are informing members that Wellpoint will no longer be providing STAR & CHIP services in impacted areas and are encouraging them to switch plans on the basis of Defendant's intended contract awards;

- Wellpoint has made significant investments in service areas that it will be forced to exit and has longstanding provider partnerships with alternative payment models that were developed and built to scale over multiple years. Wellpoint will lose the benefit of its investments in those service areas and partnerships.

- There is no legal remedy that can fully compensate Wellpoint for (1) the loss of its members, (2) the harm to its business resulting from the intended, unlawfully procured contract awards, and (3) the harm to its ability to compete in a fair and lawful procurement process in future procurements; and

The harm to Wellpoint is imminent because Defendant did not follow the requirements of Texas law in procuring the STAR & CHIP contracts but



nevertheless intends to execute and begin implementing the intended, unlawfully procured contract awards. In addition, the harm to Wellpoint is imminent as Defendant does not intend to correct her unlawful course of action for future procurements or the ongoing STAR Kids RFP.

15. Plaintiffs have also presented evidence that they will begin losing STAR & CHIP members now, even though operations under the intended STAR & CHIP contract awards are not scheduled to start until September 1, 2025. Providers are already informing Plaintiffs' members that Plaintiffs will no longer be providing STAR & CHIP services in certain service areas of the state and are encouraging members to switch plans. The confusion among providers and members alike will only worsen if the intended contract awards are executed notwithstanding the pending challenge to their legality.

16. Money damages are not adequate compensation because the harms Plaintiffs will suffer cannot be measured by any certain pecuniary standard. Furthermore, Plaintiffs cannot be adequately compensated in damages because Defendant is immune from suit for damages and any limited waiver of immunity is insufficient to compensate for Plaintiffs' harms.

17. The harms to Plaintiffs outweigh any potential harms to Defendant or HHSC that would result from preserving the status quo during the pendency of these consolidated cases. Neither Defendant nor HHSC would be harmed if the execution and further implementation of the intended STAR & CHIP contracts are delayed given that (1) operations under the intended contract awards are not scheduled to start until September 1, 2025, and (2) HHSC has previously delayed the RFP several times and was able to continue providing coverage through the current STAR & CHIP contracts by extending the contracts in effect at the time.

18. The public will not suffer harm if a temporary injunction is granted but will suffer harm if Defendant executes and implements the intended, unlawfully procured contract awards. The intended contract awards will impose significant harm and confusion on millions of Texas's

STAR & CHIP members. More than 1.5 million Texans, mostly children—and 43% of the total STAR & CHIP population—will be forced to change health plans. This in turn would cause significant harms to those beneficiaries, for which there is no adequate remedy at law available against Defendant, including:

- Confusion among those beneficiaries due to difficulties in informing them of the change in available health plans;

- Disruption to those beneficiaries' access to care and continuity of care, thereby threatening the medical care and the very health and welfare of those beneficiaries; and

- Administrative burdens of finding new health plans and potentially new healthcare providers.

19. The injunctive relief Plaintiffs request is narrow in scope and tailored to prohibit Defendant from continuing to act *ultra vires*. The balance of equities and public interest weigh in favor of granting Plaintiffs' requested injunctive relief.

Accordingly, it is therefore ORDERED that Defendant's Plea to the Jurisdiction is DENIED.

It is further ORDERED that Plaintiffs' Applications for Temporary Injunction are GRANTED. The Court ORDERS that:

- Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP; and

- Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from further proceeding with the procurement of, issuing a notice of intent to award or awarding contracts under, or otherwise implementing results from the STAR Kids RFP.



IT IS FURTHER ORDERED that Defendant shall provide notice of this Temporary Injunction to her officers, agents, servants, employees, and attorneys, as well as any persons or entities in active concert or participation with Defendant.

IT IS FURTHER ORDERED that Plaintiffs' bond or cash deposit in lieu of bond is set in the amount of $1,000.

IT IS FURTHER ORDERED that, on the filing by Plaintiffs of the bond and on approving the bond according to law (or the cash deposit in lieu of bond), the Clerk shall issue a Temporary Injunction in conformity with the law and the terms of this order.

IT IS FURTHER ORDERED that this Temporary Injunction shall not expire until final judgment in this case is entered or this case is otherwise dismissed by this Court.

IT IS FURTHER ORDERED that the trial on Plaintiffs' *ultra vires* claims seeking declaratory relief, permanent injunctive relief, and mandamus relief is set for November 3, 2025.

SIGNED on October 4, 2024.

_____
JUDGE PRESIDING

**Judge Laurie Eiserloh**
**455th District Court**

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office On 11/01/2024 09:28:21

VELVA L. PRICE
DISTRICT CLERK
By Deputy: SH

169317251.2

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 103000618
Filing Code Description: Motion
Filing Description: Motion
Status as of 7/11/2025 7:09 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Michaelle Peters | | mpeters@scottdoug.com | 7/10/2025 5:10:42 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 7/10/2025 5:10:42 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 7/10/2025 5:10:42 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 7/10/2025 5:10:42 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 7/10/2025 5:10:42 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 7/10/2025 5:10:42 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 7/10/2025 5:10:42 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 7/10/2025 5:10:42 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 7/10/2025 5:10:42 PM | SENT |
| David Johns | | david@cobbjohns.com | 7/10/2025 5:10:42 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 7/10/2025 5:10:42 PM | SENT |
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 7/10/2025 5:10:42 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 7/10/2025 5:10:42 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 7/10/2025 5:10:42 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 7/10/2025 5:10:42 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 7/10/2025 5:10:42 PM | ERROR |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 103000618
Filing Code Description: Motion
Filing Description: Motion
Status as of 7/11/2025 7:09 AM CST

Associated Case Party: Cook Children's Health Plan

| | | | | |
|---|---|---|---|---|
| Jonathan Hawley | | jhawley@perkinscoie.com | 7/10/2025 5:10:42 PM | ERROR |
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 7/10/2025 5:10:42 PM | SENT |
| Trisha Marino | | tmarino@perkinscoie.com | 7/10/2025 5:10:42 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 7/10/2025 5:10:42 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 7/10/2025 5:10:42 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 7/10/2025 5:10:42 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 7/10/2025 5:10:42 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 7/10/2025 5:10:42 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 7/10/2025 5:10:42 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 7/10/2025 5:10:42 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 7/10/2025 5:10:42 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 7/10/2025 5:10:42 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 103000618
Filing Code Description: Motion
Filing Description: Motion
Status as of 7/11/2025 7:09 AM CST

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 7/10/2025 5:10:42 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 7/10/2025 5:10:42 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 7/10/2025 5:10:42 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 7/10/2025 5:10:42 PM | SENT |